UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

NORA STRICKLAN,

      Plaintiff

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,

      Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, NORA STRICKLAN (hereinafter "Plaintiff" or "STRICKLAN"), hereby sues the Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, (hereinafter "Defendant" or "CARNIVAL") and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.     This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

2.     **THE PLAINTIFF.** The Plaintiff NORA STRICKLAN (hereinafter "Plaintiff" or "STRICKLAN") is *sui juris* and is a citizen and resident of Houston, Texas.

3.     **THE DEFENDANT**. The Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter referred to as CARNIVAL or Defendant or the cruise line) is incorporated outside of the state of Florida in the country of Panama but does business in the State of Florida. For the purpose of diversity of citizenship, CARNIVAL is a citizen of Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida. At all

1

times material hereto the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4.    **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5.    **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

## <u>OTHER ALLEGATIONS COMMON TO ALL COUNTS</u>

6.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

7.     **<u>DATE OF THE INCIDENT</u>**.  The incident occurred January 18, 2020.

8.     **<u>LOCATION OF THE INCIDENT.</u>**  The incident occurred onboard the vessel the *Carnival Dream* a ship in navigable water, while the Plaintiff was a passenger onboard. Accordingly, the Plaintiff's claims are governed by general maritime law. Specifically, this incident occurred on the Lido Deck on the slippery tile floor in the passenger walkway of Guys Burger Place while the ship was in navigable waters.

9.     **<u>STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.</u>** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10.     **<u>CARNIVAL DREAM AND THE DANGEROUS CONDITION.</u>** CARNIVAL owns and/or operates the *Carnival Dream.*  The *Carnival Dream* was first put into service on October 24, 2008. CARNIVAL has operated and maintained the ship continuously since October 2008.

11.     The *Carnival Dream* has a capacity for 3,646 passengers and 1,369 crew members. Carnival's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. One of these areas is the Lido Deck, which features pools, buffet restaurants and bars including The Gathering (Lido Buffet), Guys Burger Place, BlueIguana Cantina, Mongolian Wok, Seafood Shack, Pizzeria del Capitano, Swirls (soft serve and froyo), Carnival Deli, RedFrong Rum Bar, Sunset Bar, and BlueIguana Tequila Bar. One of

CARNIVAL's busiest central locations is its buffet restaurants. CARNIVAL knows that passengers will move throughout the buffet restaurant on a repetitive basis. CARNIVAL also knows that its buffet restaurants are busy highly trafficked areas. CARNIVAL knows that passengers will walk through the buffet areas to access other areas of the ship. CARNIVAL allows passengers to walk throughout its buffet restaurants which are comprised of multiple food and drink stations and seating areas with tables and chairs. CARNIVAL allows passengers to get food and drinks from the service stations as many times as they like. CARNIVAL knows that passengers will and do spill or drop food and drinks on the floor. Throughout the buffet there are carpeted areas which transitions into tile flooring. The tile flooring walkways by the Buffet on the Lido Deck are subject to significant passenger traffic. These tile floor walkways are also susceptible to contaminants, like water or other liquids, grease from food being dropped and other slick substances. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. This is an ongoing, continuous problem of which CARNIVAL is well-aware.

12.     **DESCRIPTION OF THE INCIDENT.** CARNIVAL failed to properly monitor, clean, and dry a slick and dangerous condition existing on the tile floor in the passenger walkway in the buffet area on the Lido deck on January 18, 2020. CARNIVAL allowed the tile flooring to accumulate slick conditions for an extended period. The buffet opens at 6:30am, Guys Burger Place opens at 12:00pm and the Swirls is open 24 hours. At approximately 4:30pm, STRICKLAN was walking from Guys Burger Place to the buffet area on the Lido deck.  The floor changed from carpet to tile. The shiny tile flooring prevented, passengers like STRICKLAN, from seeing the greasy, slippery substance on the floor. CARNIVAL failed to place warning signs in the area where the incident occurred. As STRICKLAN stepped from the carpet onto the greasy, slippery tile floor

4

by the ice cream machines, she slipped backwards and fell hitting her back of her head. After the incident, a CARNIVAL crewmember placed a caution cone in the area.

13.     As a result of the CARNIVAL's negligence, STRICKLAN suffers severe and permanent injuries. Carnival's medical personnel arrived and placed STRICKLAN onto a gurney to transport her to the medical infirmary. At the infirmary, STRICKLAN was examined and provided anti-inflammatory and ibuprofen medication. STRICKLAN returned to her cabin. On January 19, 2020, STRICKLAN continued to complain about her tailbone and headaches and returned to the medical infirmary.  CARNIVAL's medical personnel provided STRICKLAN with a shot of morphine to assist with her pain. The following day, when the ship returned to port, STRICKLAN was transported by ambulance to UTMB Health in Galveston, Texas where she was seen by a neurosurgeon.  STRICKLAN was diagnosed with a subdural hematoma on top of her head and a concussion. STRICKLAN also fractured her tailbone.

14.     **NOTICE: PRIOR SIMILAR INCIDENTS**. CARNIVAL knew or should have known about the dangerous condition because of prior similar incidents. See *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1370 (11th Cir. 2018) (accepting that that prior reports of similar incidents are sufficient to provide a cruise ship operator with notice of a dangerous condition); *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"). See *Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d

1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....").

    a.  Tammy Merideth was severely injured on board the *Carnival Magic* on May 22, 2013. Merideth was eating breakfast at the self-service "Lido" restaurant on the aft deck of the *M/S Carnival Magic*, one of three similarly-constructed "Dream Class" vessels operated by Carnival. As she stepped from a carpeted area to the tile floor, her foot lost traction, slipping out from underneath her and causing her to fracture her right knee and femur. *Merideth v. Carnival Corp.,* 49 F. Supp. 3d 1090 (S.D. Fla. 2014) (court denied defendant's motion for summary judgment).

    b.  David Tutor was severely injured on board the *Carnival Dream* on December 28, 2015. Tutor was injured when he fell on a slippery floor on the Lido Deck in the Buffet area. Tutor filed a lawsuit as a result of this incident. See <u>Tutor v. Carnival Corp.</u>, Case No. 1:16-cv-23464-DPG.

    c.  Azalee Bason was severely injured on board the *Carnival Dream* on April 25, 2011. Tutor was injured when he fell on a slippery floor on the Lido Deck in the Buffet area. Bason filed a lawsuit as a result of this incident. See <u>Bason  v. Carnival Corp.</u>, Case No. 1:12-cv-21502-CMA

15.   **NOTICE: CAUTION SIGNS.** Additionally, CARNIVAL knew or should have known about the dangerous condition of their slippery tile floor because CARNIVAL posts caution signs in the area and did so after the incident. *Elizabeth Amy v. Carnival Corp.*, 961 F.3d 1303 (11th Cir. June 16, 2020); *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1094 (S.D. Fla. 2014) (holding that the "presence of warning cones" near an alleged slip and fall is evidence from which "a reasonable jury could ... infer that [the defendant] was on notice of the potentially hazardous

condition."); *Horne v. Carnival Corp.*, 741 F. App'x 607, 608 (11th Cir. 2018) (holding that evidence that Carnival sometimes posted signs on a specific pool deck door that read "caution, strong winds" created "a genuine issue of fact" as to whether Carnival had actual or constructive notice of the hazardous condition); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288-89 (11th Cir. 2015) (concluding that a cruise ship operator had notice that the ship's pool deck could be slippery after rain from evidence that crew members sometimes posted warning signs on the pool deck after rain.).

16.    **NOTICE: LENGTH OF TIME OF CONDITION EXISTED.** Additionally, CARNIVAL knows or should know about the dangerous condition because of the length of time the dangerous condition existed. The buffet opens at 6:30am, Guys Burger Place opens at 12:00pm and the Swirls is open 24 hours. The subject incident occurred at approximately 4:30pm. *Plott v. NCL Am., LLC*, 786 Fed. Appx. 199, 201 (11th Cir. 2019) (finding sufficient period of time when crewmembers continuously monitored an area that had been wet for at least twenty to twenty-five minutes; *Underwood v. NCL (Bahamas) Ltd.*, 2019 WL 2011389, at *2 (S.D. Fla. Feb. 12, 2019) (sufficient period of time when puddle existed for at least  fifteen minutes); *Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d 1189, 1190 (S.D. Fla. 2016) (puddle that existed at least fifteen minutes sufficient for a reasonable jury to find constructive notice); *Marsh v. Celebrity Cruises, Inc.*, 2017 WL 6498107, at *3  (S.D. Fla. Dec. 13, 2017) (evidence that a liquid was present on the floor for at least  thirty minutes before plaintiff's fall sufficient for a reasonable jury to find a defendant cruise ship operator had constructive knowledge of its existence.)

17.    **NOTICE: NEARBY CREWMEMBER.**  Additionally, CARNIVAL knows or should know about the dangerous condition because there were crewmembers in the vicinity of where the incident occurred. *Plott v. NCL Am., LLC*, 786 Fed. Appx. 199, 203 (11th Cir. 2019)

citing  *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 272 S.E.2d 327, 330 (Ga. 1980) ("In some cases the proprietor may be held to have constructive knowledge if the plaintiff shows that an employee of the proprietor was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard." (quotation marks omitted)); *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018) ("[The] facts place the crew member in the immediate vicinity of a puddle of soap that was one-and-a-half feet in diameter. Drawing all reasonable inferences in [plaintiff's] favor, a factfinder could conclude that the crew member knew or should have known about the puddle of soap at his feet and either removed the hazard or warned [plaintiff] of it."). *Haiser v. MSC Cruises (USA) Inc.,* 2019 WL 4693200, at *5 (S.D. Fla. Aug. 9, 2019) (denying summary judgment in part where a "reasonable factfinder could conclude that crewmembers knew or should have known about the presence of water on floor since they were in the immediate vicinity and based on the amount of time the water was there."); *Markowitz v. Helen Homes of Kendall Corp.*, 826 So.2d 256, 261 (Fla. 2002) ("The fact that there were three employees in the vicinity of where the fall occurred is sufficient to create a jury question as to whether [Defendant] exercised reasonable care under the circumstances to maintain its premises in a safe condition.")

18.     **NOTICE: VIOLATION OF INDUSTRY STANDARDS**.  Additionally, CARNIVAL knows or should know that relevant industry standards, regulations, and codes dictate that its flooring should be kept safe for foreseeable conditions like the accumulation of water, food, spills, and liquids.  "[T]he law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11–20723–CIV, 2012 WL 1792628, at *3 (S.D.Fla. May 15, 2012) (citing *Muncie Aviation Corp.*

*v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir.1978)).Such guidelines are also probative of the defendants' constructive knowledge of the allegedly hazardous condition. See *Cook*, 2012 WL 1792628, at *3; *Donlon v. Gluck Grp., LLC*, No. 09–5379 (JEI/KMW), 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011); See *Holderbaum v. Carnival Corp.,* 87 F. Supp. 3d 1345 (S.D. Fla. February 19, 2015) (the court held that based on the IMO recommendation and the record evidence, a reasonable jury could conclude that the handrail was too large, hazardous, and that Defendant knew it was too large and hazardous) *Muncie Aviation Corp.,* 519 F.2d at 1181 (holding that to the extent the defendant's pilot failed to consult advisory materials issued by the Federal Aviation Administration, or failed to follow their recommendations, "the jury could permissibly infer that he failed to meet the appropriate standard of due care"); *Frazier*, 568 F.2d at 381–82 (holding that the district court erroneously excluded testimony concerning violations of industry standards to establish the defendant's negligence); see also *Donlon*, 2011 WL 6020574, at *6 (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the American Society for Testing and Materials were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs").

19.   **NOTICE: POLICY AND PROCEDURES**. Additionally, CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Dream* for crewmembers to clean and dry wet surfaces.

20.   **NOTICE: ON-GOING REPETITIVE PROBLEM**. Additionally, CARNIVAL knew or should have known about the dangerous condition given that the title floors are often slick

and slippery. This is also an on-going repetitive problem for other ships in Carnival's fleet and in the same class of ships as the *Carnival Dream,* which includes the *Carnival Magic, Carnival Breeze* and *Costa Diadema*.

## COUNT I
## NEGLIGENT FAILURE TO MAINTAIN

21.     The Plaintiff, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 20, above.

22.     This is an action for negligence based on Carnival's failure to maintain the tile floor in the passenger walkway in the buffet area on the Lido deck on board the *Carnival Dream* in a safe manner.

23.     **DUTIES OWED BY THE DEFENDANT**.  CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers," including STRICKLAN. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991).

24.     CARNIVAL owes a duty as a common carrier to its passengers to maintain the flooring on board the *Carnival Dream* in a safe manner. Carnival owes a duty of reasonable care under the circumstances. The circumstances are as follows: Carnival's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. One of these areas is the Lido Deck, which features pools, buffet restaurants and bars including The Gathering (Lido Buffet), BlueIguana Cantina, Guys Burger Place, Mongolian Wok, Seafood Shack, Pizzeria del Capitano, Swirls (soft serve and froyo), Carnival Deli, RedFrong Rum Bar, Sunset Bar, and BlueIguana Tequila Bar. One of CARNIVAL's busiest central locations is its buffet restaurants. CARNIVAL knows that passengers will move throughout the buffet restaurant

on a repetitive basis. CARNIVAL also knows that its buffet restaurants are busy highly trafficked areas. CARNIVAL knows that passengers will walk through the buffet areas to access other areas of the ship. CARNIVAL allows passengers to walk throughout its buffet restaurants which are comprised of multiple food and drink stations and seating areas with tables and chairs. CARNIVAL allows passengers to get food and drinks from the service stations as many times as they like. CARNIVAL knows that passengers will and do spill or drop food and drinks on the floor. Throughout the buffet there are carpeted areas which transitions into tile flooring. The tile flooring walkways by the Buffet on the Lido Deck are subject to significant passenger traffic. These tile floor walkways are also susceptible to contaminants, like water or other liquids, grease from food being dropped and other slick substances. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. This is an ongoing, continuous problem of which CARNIVAL is well-aware. For these reasons, CARNIVAL's duty of care includes maintaining the flooring on board the *Carnival Dream,* including the tile flooring where STRICKLAN was injured on January 18, 2019.

25.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  CARNIVAL's walkways are escape routes that CARNIVAL knew or should have known it must maintain in a safe, clear, clean and secure condition.

26.     CARNIVAL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

27.     CARNIVAL knew or should have known about the dangerous condition from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

28.     CARNIVAL knew or should have known about the dangerous condition of their slippery tile floor because CARNIVAL posts caution signs in the area and did so after the incident.

29.     CARNIVAL knows or should know about the dangerous condition because of the length of time the dangerous condition existed.

30.     CARNIVAL knows or should know about the dangerous condition because there were crewmembers in the vicinity of where the incident occurred.

31.     CARNIVAL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

32.     CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Dream* for crewmembers to clean and dry wet surfaces.

33.     CARNIVAL knew or should have known about the dangerous condition because it is an on-going repetitive problem.

34.     **CARNIVAL BREACHES OF DUTY.**  CARNIVAL breached its duty to maintain the tile floor on Deck 10 on board the *Carnival Dream* where STRICKLAN was injured on January 18, 2019.   CARNIVAL breached its duties to STRICKLAN by its actions and conduct. CARNIVAL through its crew members failed to properly clean and dry the tile floor. CARNIVAL through its crew members failed to inspect and monitor the area even though CARNIVAL knew that this area can accumulate slick conditions, which make the floor slippery. CARNIVAL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. CARNIVAL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

35.     **PROXIMATE CAUSE**: CARNIVAL's failure to maintain the tile floor on Deck 10 on board the *Carnival Dream* proximately caused STRICKLAN's injuries on January 18, 2019. Had CARNIVAL properly maintained the tile flooring on board the *Carnival Dream* on January 18, 2019, STRICKLAN would have never been injured on board the *Carnival Dream.*

36.     **DAMAGES**: CARNIVAL's negligence proximately caused permanent injuries and damages to STRICKLAN in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for

the enjoyment of life. The losses are either permanent or continuing. STRICKLAN has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, STRICKLAN, demands Judgment against CARNVIAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO WARN

37. The Plaintiff, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 20, above.

38. This is an action for negligence of CARNIVAL failing to warn passengers, including STRICKLAN, of its hazards, risks or dangers.

39. **DUTIES OWED BY THE DEFENDANT**. CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers," including STRICKLAN. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in

admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

40.     CARNIVAL owes a duty as a common carrier to its passengers to warn of dangers known to CARNIVAL where CARNIVAL invite or reasonably expect passengers to go. CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are as follows: Carnival's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. One of these areas is the Lido Deck, which features pools, buffet restaurants and bars including The Gathering (Lido Buffet), BlueIguana Cantina, Guys Burger Place, Mongolian Wok, Seafood Shack, Pizzeria del Capitano, Swirls (soft serve and froyo), Carnival Deli, RedFrong Rum Bar, Sunset Bar, and BlueIguana Tequila Bar. One of CARNIVAL's busiest central locations is its buffet restaurants. CARNIVAL knows that passengers will move throughout the buffet restaurant on a repetitive basis. CARNIVAL also knows that its buffet restaurants are busy highly trafficked areas. CARNIVAL knows that passengers will walk through the buffet areas to access other areas of the ship. CARNIVAL allows passengers to walk throughout its buffet restaurants which are comprised of multiple food and drink stations and seating areas with tables and chairs. CARNIVAL allows passengers to get food and drinks from the service stations as many times as they like. CARNIVAL knows that passengers will and do spill or drop food and drinks on the floor. Throughout the buffet there are carpeted areas which transitions into tile flooring. The tile flooring walkways by the Buffet on the Lido Deck are subject to significant passenger traffic. These tile floor walkways are also susceptible to contaminants, like water or other liquids, grease from food being dropped and other slick

substances. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. This is an ongoing, continuous problem of which CARNIVAL is well-aware. For these reasons, CARNIVAL's duty of care includes warning of the dangerous conditions on board the *Carnival Dream*, including the tile flooring where STRICKLAN was injured on January 18, 2019.

41.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  CARNIVAL's walkways are escape routes that CARNIVAL knew or should have known it must maintain in a safe, clear, clean and secure condition.

42.     CARNIVAL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

43.     CARNIVAL knew or should have known about the dangerous condition from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

44.     CARNIVAL knew or should have known about the dangerous condition of their slippery tile floor because CARNIVAL posts caution signs in the area and did so after the incident.

45.     CARNIVAL knows or should know about the dangerous condition because of the length of time the dangerous condition existed.

46.     CARNIVAL knows or should know about the dangerous condition because there were crewmembers in the vicinity of where the incident occurred.

47.     CARNIVAL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

48.     CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Dream* for crewmembers to clean and dry wet surfaces.

49.     CARNIVAL knew or should have known about the dangerous condition because it is an on-going repetitive problem.

50.     CARNIVAL is aware that it owes a duty as a common carrier to its passengers to warn of dangers known to CARNIVAL where CARNIVAL invite or reasonably expect passengers to go. CARNIVAL distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.  CARNIVAL train its crew members to warn passengers of hazardous or slippery conditions verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from walking on the hazardous and/or slippery condition.

51.   **CARNIVAL BREACHES OF DUTY.**   CARNIVAL breached its duty to warn STRICKLAN about the dangerous conditions on board the *Carnival Dream,* including the tile flooring where STRICKLAN was injured on January 18, 2019.   CARNIVAL breached its duties to STRICKLAN by its actions and conduct.   CARNIVAL through its crew members failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices on or near the dangerous condition.   CARNIVAL' crew members failed to reasonably and regularly make audible announcements regarding the dangerous condition. CARNIVAL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. CARNIVAL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

52.   **PROXIMATE CAUSE**: CARNIVAL's failure to properly warn B.R of the dangerous condition proximately caused the STRICKLAN.'s injuries. Had CARNIVAL properly warned STRICKLAN of the dangerous condition, STRICKLAN would have been aware of the dangerous conditions on board the *Carnival Dream*, including the tile flooring where STRICKLAN was injured on January 18, 2019. STRICKLAN therefore would have never been injured on board the *Carnival Dream* on January 18, 2019.

53.   **DAMAGES**: CARNIVAL's negligence proximately caused permanent injuries and damages to STRICKLAN in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability,

physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing. STRICKLAN has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, STRICKLAN, demands Judgment against CARNVIAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT III
## NEGLIGENT TRAINING OF PERSONNEL

54.     The Plaintiff, hereby adopts and re-alleges each and every allegation in Paragraphs 1-20, above.

55.     This is an action for negligence of CARNIVAL negligent training of shipboard crewmembers.

56.     **DUTIES OWED BY THE DEFENDANT**.  CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers," including STRICKLAN. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to train its shipboard crew members.

57.    CARNIVAL owes a duty as a common carrier to its passengers to train its crew members warn of dangers known to CARNIVAL where CARNIVAL invite or reasonably expect passengers to go.   CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are as follows: Carnival's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. One of these areas is the Lido Deck, which features pools, buffet restaurants and bars including The Gathering (Lido Buffet), BlueIguana Cantina, Guys Burger Place, Mongolian Wok, Seafood Shack, Pizzeria del Capitano, Swirls (soft serve and froyo), Carnival Deli, RedFrong Rum Bar, Sunset Bar, and BlueIguana Tequila Bar. One of CARNIVAL's busiest central locations is its buffet restaurants. CARNIVAL knows that passengers will move throughout the buffet restaurant on a repetitive basis. CARNIVAL also knows that its buffet restaurants are busy highly trafficked areas. CARNIVAL knows that passengers will walk through the buffet areas to access other areas of the ship. CARNIVAL allows passengers to walk throughout its buffet restaurants which are comprised of multiple food and drink stations and seating areas with tables and chairs. CARNIVAL allows passengers to get food and drinks from the service stations as many times as they like. CARNIVAL knows that passengers will and do spill or drop food and drinks on the floor. Throughout the buffet there are carpeted areas which transitions into tile flooring. The tile flooring walkways by the Buffet on the Lido Deck are subject to significant passenger traffic. These tile floor walkways are also susceptible to contaminants, like water or other liquids, grease from food being dropped and other slick substances. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. This is an ongoing, continuous problem of which CARNIVAL is well-aware. For these reasons, CARNIVAL's duty of care includes training

crewmember to warn passengers about the dangerous conditions on board the *Carnival Dream*, including the tile flooring where STRICKLAN was injured on January 18, 2019.

58.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  CARNIVAL's walkways are escape routes that CARNIVAL knew or should have known it must maintain in a safe, clear, clean and secure condition.

59.     CARNIVAL trains its shipboard crewmembers to warn passengers of the dangerous conditions on board the *Carnival Dream*, that may cause injuries to passengers. CARNIVAL knew, or should have known, of the importance of training its crewmembers to warn passengers of the dangerous conditions on board the *Carnival Dream.* CARNIVAL trains its crewmembers that passengers may not know that floors or surfaces on board *Carnival Dream* may be dangerous and could cause injuries to passengers. CARNIVAL knew or should have known the importance of training its crewmembers that passengers may not know that floors or surfaces on board *Carnival Dream* may be dangerous and could cause injuries to passengers. CARNIVAL trains its crewmembers to warn passengers of hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from being injured. CARNIVAL knew or should have known of the importance of training its crew members to warn passengers of hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from being injured. CARNIVAL also distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.

However, despite knowing how and the reason why CARNIVAL should train its crewmembers, CARNIVAL failed to do so.

60.     CARNIVAL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

61.     CARNIVAL knew or should have known about the dangerous condition from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

62.     CARNIVAL knew or should have known about the dangerous condition of their slippery tile floor because CARNIVAL posts caution signs in the area and did so after the incident.

63.     CARNIVAL knows or should know about the dangerous condition because of the length of time the dangerous condition existed.

64.     CARNIVAL knows or should know about the dangerous condition because there were crewmembers in the vicinity of where the incident occurred.

65.     CARNIVAL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

66.    CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Dream* for crewmembers to clean and dry wet surfaces.

67.    CARNIVAL knew or should have known about the dangerous condition because it is an on-going repetitive problem.

68.    CARNIVAL should have become aware that it had failed to properly train its crew members given that the crew member(s) were failing to properly warn passengers of the dangerous conditions on board the *Carnival Dream* including the tile flooring where STRICKLAN was injured on January 18, 2019.

69.    **CARNIVAL BREACHED ITS DUTY**: CARNIVAL breached its duty of care owed to STRICKLAN and was negligent by failing to reasonably train its crewmembers to warn passengers of the dangerous conditions on board the *Carnival Dream*, including the tile flooring where STRICKLAN was injured on January 18, 2019. CARNIVAL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. CARNIVAL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

70.    **PROXIMATE CAUSE**: CARNIVAL's failure to properly train CARNIVAL's crew members proximately caused STRICKLAN's injuries.  Had CARNIVAL properly trained CARNIVAL's crew members to warn passengers of dangerous conditions on board the *Carnival Dream*, including the tile flooring where STRICKLAN was injured on January 18, 2019, the crewmember would have warned STRICKLAN of the dangerous condition and STRICKLAN would

have been aware of the dangerous condition. STRICKLAN therefore would never been injured on January 18, 2019.

71.    **DAMAGES**: CARNIVAL's negligence proximately caused permanent injuries and damages to STRICKLAN in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. STRICKLAN has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, STRICKLAN, demands Judgment against CARNVIAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT IV
## NEGLIGENT SUPERVISION OF PERSONNEL

72.     The Plaintiff, hereby adopts and re-alleges each and every allegation in Paragraphs 1-20, above.

73.     This is an action for negligence of CARNIVAL negligent supervision of shipboard crewmembers.

74.     **DUTIES OWED BY THE DEFENDANT**.  CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers," including STRICKLAN. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to supervise its shipboard crew members.

75.     CARNIVAL owes a duty as a common carrier to its passengers to supervise its crew members to ensure CARNIVAL's crew members are properly warning passengers of dangers known to CARNIVAL where CARNIVAL invite or reasonably expect passengers to go. CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are as follows: Carnival's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. One of these areas is the Lido Deck, which features pools, buffet restaurants and bars including The Gathering (Lido Buffet), BlueIguana Cantina, Guys Burger Place, Mongolian Wok, Seafood Shack, Pizzeria del Capitano, Swirls (soft serve and froyo), Carnival Deli, RedFrong Rum Bar, Sunset Bar, and BlueIguana Tequila Bar. One of CARNIVAL's busiest central locations is its buffet restaurants. CARNIVAL knows that passengers will move throughout the buffet restaurant on a repetitive basis. CARNIVAL also knows that its buffet restaurants are busy highly trafficked areas. CARNIVAL knows that

passengers will walk through the buffet areas to access other areas of the ship. CARNIVAL allows passengers to walk throughout its buffet restaurants which are comprised of multiple food and drink stations and seating areas with tables and chairs. CARNIVAL allows passengers to get food and drinks from the service stations as many times as they like. CARNIVAL knows that passengers will and do spill or drop food and drinks on the floor. Throughout the buffet there are carpeted areas which transitions into tile flooring. The tile flooring walkways by the Buffet on the Lido Deck are subject to significant passenger traffic. These tile floor walkways are also susceptible to contaminants, like water or other liquids, grease from food being dropped and other slick substances. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. This is an ongoing, continuous problem of which CARNIVAL is well-aware. For these reasons, CARNIVAL's duty of care includes supervising its crew members to ensure that passengers are properly warned about the dangerous conditions on board the *Carnival Dream*, including the tile flooring where STRICKLAN was injured on January 18, 2019.

76.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  CARNIVAL's walkways are escape routes that CARNIVAL knew or should have known it must maintain in a safe, clear, clean and secure condition.

77.     CARNIVAL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

78.     CARNIVAL knew or should have known about the dangerous condition from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

79.     CARNIVAL knew or should have known about the dangerous condition of their slippery tile floor because CARNIVAL posts caution signs in the area and did so after the incident.

80.     CARNIVAL knows or should know about the dangerous condition because of the length of time the dangerous condition existed.

81.     CARNIVAL knows or should know about the dangerous condition because there were crewmembers in the vicinity of where the incident occurred.

82.     CARNIVAL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, <u>MSC Circular 735</u> (24 June 1996); U.S. Access Board, <u>Draft Passenger Vessel Accessibility Guidelines</u> (2000-present) and ADA <u>Accessibility Guidelines</u>; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; <u>Life Safety Code</u>; and Safety of Life at Sea SOLAS) Treaty.

83.     CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Dream* for crewmembers to clean and dry wet surfaces.

84.     CARNIVAL knew or should have known about the dangerous condition because it is an on-going repetitive problem

85.     CARNIVAL should have become aware of the crew member(s) failure to properly warn passengers about the dangerous conditions on board the *Carnival Dream*, including the tile flooring where STRICKLAN was injured on January 18, 2019.

86.     **CARNIVAL BREACHED ITS DUTY**: CARNIVAL breached its duty of care owed to STRICKLAN and was negligent by failing to reasonably supervise its crewmembers to ensure that the crew members are warning passengers about the dangerous conditions on board the *Carnival Dream*, including the tile flooring where STRICKLAN was injured on January 18, 2019. CARNIVAL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. CARNIVAL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

87.     **PROXIMATE CAUSE**: CARNIVAL's failure to properly supervise CARNIVAL crew members proximately caused STRICKLAN.'s injuries. Had CARNIVAL properly supervised CARNIVAL's crew members to warn passengers about the dangerous conditions on board the *Carnival Dream*, including the tile flooring where STRICKLAN was injured on January 18, 2019, the crewmember would have warned STRICKALN of the dangerous condition and STRICKLAN would have been aware of the dangerous condition. STRICKLAN therefore would have never been injured on board the *Carnival Dream* on January 18, 2019.

88.     **DAMAGES**: CARNIVAL's negligence proximately caused permanent injuries and damages to STRICKLAN in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the

past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.    The losses are either permanent or continuing. STRICKLAN has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, STRICKLAN, demands Judgment against CARNVIAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT V
## NEGLIGENT DESIGN, CONSTRUCTION AND SELECTION OF MATERIALS

89.    The Plaintiff, hereby adopts and re-alleges each and every allegation in Paragraphs 1-20, above.

90.    This is an action for negligence due to CARNIVAL's negligent design, construction and selection of materials.

91.    **DUTIES OWED BY CARNIVAL**: CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers" including STRICKLAN. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No.

3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**.**" *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for negligent design, construction and selection of materials on the *Carnival Dream.*

92.     CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are as follows: CARNIVAL owns and/or operates the *Carnival Dream.* The *Carnival Dream* was first put into service on October 24, 2008. CARNIVAL has operated and maintained the ship continuously since October 2008.

93.     CARNIVAL has all of its ships including the Carnival Dream custom made to its own design and specifications. After CARNIVAL's designs are created, CARNIVAL approved, and/or controlled or had the right to control the construction of the structures as well as the selection of all materials on board the *Carnival Dream* including floors and surfaces.

94.     The *Carnival Dream* was designed by or at the direction of CARNIVAL's shoreside New Build and other shoreside departments. CARNIVAL maintains shoreside departments that are responsible for the design, selection and construction of CARNIVAL's ships. CARNIVAL also maintains shoreside departments that are responsible for changes and modification to the design, construction and selection of materials when CARNIVAL refit or modify its ships. These shoreside departments consist of naval architects, engineers, designers and other employees who are employed by CARNIVAL.

95.     CARNIVAL custom built the *Carnival Dream* cruise ship at Fincantieri Cantieri Navali, in a shipyard in Italy under the constant supervision of CARNIVAL's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, CARNIVAL not only had full access to the ship to inspect and the ability to inspect the designs used for

construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. CARNIVAL holds the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, CARNIVAL can withhold payment.  That includes the materials used on all the floors or surfaces on Deck 10 onboard the *Carnival Dream* which caused this incident and these injuries.

96.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  CARNIVAL's walkways are escape routes that CARNIVAL knew or should have known it must maintain in a safe, clear, clean and secure condition.

97.     CARNIVAL chose to create, design, and construct all of the flooring and materials on board the *Carnival Dream*, including the tile flooring where STRICKLAN was injured on January 18, 2019.

98.     CARNIVAL selected and/or approved of all materials on board the *Carnival Dream*, including the tile flooring where STRICKLAN was injured on January 18, 2019.

99.     CARNIVAL should have known that the flooring that it chose to create, design, and construct is unreasonably dangerous.

100.    CARNIVAL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

101.    CARNIVAL knew or should have known about the dangerous condition from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior

shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

102.     CARNIVAL knew or should have known about the dangerous condition of their slippery tile floor because CARNIVAL posts caution signs in the area and did so after the incident.

103.     CARNIVAL knows or should know about the dangerous condition because of the length of time the dangerous condition existed.

104.     CARNIVAL knows or should know about the dangerous condition because there were crewmembers in the vicinity of where the incident occurred.

105.     CARNIVAL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

106.     CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Dream* for crewmembers to clean and dry wet surfaces.

107.     CARNIVAL knew or should have known about the dangerous condition because it is an on-going repetitive problem.

108.     Because CARNIVAL had the ultimate control over the design, construction and selection of materials for its ships, CARNIVAL could refuse to approve the design, construction and selection of materials used on board the *Carnival Dream.* CARNIVAL knew or should have known about the dangerousness of the door the flooring where STRICKLAN was injured on January 18, 2019.

109.     CARNIVAL knew or should have known about the dangerous condition on board the *Carnival Dream* since the floors were installed and/or any changes or modifications.

110.     **CARNIVAL BREACHED ITS DUTY**: CARNIVAL breached its duty of care owed to STRICKLAN and was negligent by failing to design, construct, select, approve and/or reject the flooring where STRICKLAN was injured on January 18, 2019. CARNIVAL failed to design, construct, select, approve and/or reject materials that complied with industry standards. The design and/or materials CARNIVAL selected and used for the flooring on board the *Carnival Dream* is unreasonably dangerous. CARNIVAL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. CARNIVAL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

111.     **PROXIMATE CAUSE**: CARNIVAL's negligent design, construct and select materials proximately caused STRICKLAN's injuries.  Had CARNIVAL properly designed, constructed and selected the materials STRICKLAN would have never been injured on board the *Carnival Dream* on January 18, 2019.

112.     **DAMAGES**: CARNIVAL's negligence proximately caused permanent injuries and damages to STRICKLAN in the past and in the future. Those injuries and damages include but are

not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. STRICKLAN has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, STRICKLAN, demands Judgment against CARNVIAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:      *s/ John H. Hickey, Esq.*
**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**LISA C. GOODMAN, ESQ**. (FBN118698)
lgoodman@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorney for the Plaintiff*